**UNITED STATES of America, Plaintiff,**

v.

**Philip F. CALEK, Defendant.**

**No. 8:98CR153–1.**

United States District Court, D. Nebraska.

March 31, 1999.

Michael P. Norris, Assistant United States Attorney, Omaha, NE, for plaintiff.

Steven E. Achelpohl, Omaha, NE, for defendant.

**MEMORANDUM AND ORDER**

BATAILLON, District Judge.

Before me is the defendant's appeal (Filing No. 24) of the magistrate's order (Filing No. 22) dated February 8, 1999. The magistrate found the defendant mentally competent to understand the nature and consequences of the proceeding against him and to assist properly in his defense, and ordered the case against the defendant to proceed in the ordinary course of criminal proceedings in this district. Filing No. 22 at 7. The defendant stands

charged by indictment with one count of bank robbery under 18 U.S.C. § 2113(a).

I heard oral argument on the defendant's appeal on March 10, 1999. In addition, I have reviewed the record, including all sealed documents; the defendant's brief in support of the appeal; the applicable law; and the evidence presented to the magistrate during the competency hearings. The evidence consisted primarily of 1) the sealed report on defendant's mental health evaluation conducted by the clinical staff at the Federal Medical Center (FMC) at Rochester, Minnesota in September 1998 (Filing No. 10), and 2) the curriculum vitae and the sealed reports of William S. Logan, M.D. (Hrg. of 12/11/98, Defendant's Exhibits 1–3 [sealed]).

The FMC report was signed by Rosemary A. Munns, M.A., Psychology Intern, and Christine Scronce, Ph.D., Director of Forensics. The FMC staff concluded that the defendant was competent to stand trial even though he suffered from a mental disease or defect. The staff estimated that he was in the borderline range of intellectual functioning and found that he had a lengthy history of schizophrenia with prominent negative symptoms which persisted despite medication and treatment. They also found the defendant to be alcohol dependent, a condition which went into remission when the defendant lived in a controlled environment. The defendant's mental status apparently stabilized when he was medicated on a consistent basis in a structured setting, but the FMC staff concluded that his level of functioning likely would not improve significantly even with medication.

Despite these findings, the FMC staff concluded that the defendant's mental disease or defect did not render him unable to understand the nature and consequences of the proceedings against him. They wrote:

> [H]is present symptoms of mental illness do not appear to interfere significantly with his ability to understand the nature and consequences of the proceedings against him. In addition, while his intellectual functioning is limited, it appeared adequate to appreciate his current legal circumstances. He displayed a simple but adequate understanding of courtroom procedures, the charges against him, and an ability to understand and communicate with his attorney in a rational manner. Further, he demonstrated the ability to understand and retain information about court-related matters when they were explained to him. One difficulty Mr. Calek may have during lengthy court proceedings is a tendency to become stressed and fatigued, which could be addressed by giving him frequent breaks. Defense counsel can also assist the defendant by explaining things simply and concretely and checking to make sure he understands by asking him to repeat back information....
>
> His presentation during the present evaluation suggested a dependency on others to make decisions for him. For instance, when discussing issues regarding his case, he indicated a belief that his brother-in-law and attorney would decide about issues regarding his case. Although he indicated a willingness to let them make the decisions about his case, this does not mean he does not have the capacity to understand the court process and make these decisions for himself.... Thus, regarding courtroom proceedings and defense strategies, Mr. Calek is likely to be passive and not get involved unless he is continually encouraged to do so. Defense counsel can increase Mr. Calek's participation in his defense by actively soliciting his preferences and desires with regard to defense strategies and other decisions regarding his case.

Filing No. 10 at 8–9. The staff concluded, however, that the defendant's continued competence "is likely dependent upon the maintenance of his current psychotropic medication regimen." *Id.* at 9.

The magistrate granted (Filing No. 14 [sealed]) the defendant's ex parte motion

(Filing No. 12 [sealed]) to hire Dr. Logan to evaluate the defendant's competency to stand trial and a possible insanity defense. Dr. Logan submitted a report in November 1998 and a supplemental report in December 1998. Def. Exs. 2 and 3, respectively (sealed). Although Dr. Logan's diagnosis of the defendant's mental condition was generally the same as that reached by the FMC staff—schizophrenia with permanent positive and negative symptoms; alcohol dependency in remission in a controlled environment; borderline intellectual functioning [1]—his conclusions about the defendant's competency to stand trial are strikingly different from those of the FMC staff.

Dr. Logan noted that even though the defendant was receiving antipsychotic medication while in custody, he continued to experience both negative and positive symptoms of schizophrenia. While the medication gave him "marginal control of the positive symptoms," Def. Ex. 2 at 15, he continued to have auditory hallucinations in which voices both inside and outside his head "make both routine and derogatory comments about his behavior," *id.*, and to "believe in delusional ideas of thought insertion and thought control," *id.* at 13. Dr. Logan also found that the antipsychotic medications have little im-

pact on the defendant's negative symptoms of schizophrenia, such as "low morale, poor motivation, a lack of interest in his surroundings, social withdrawal, isolation, easy fatigability and low energy." *Id.* at 15. Dr. Logan wrote that

Mr. Calek knows the nature of the charges against him and has a basic, although not entirely accurate, understanding of court procedure. He has difficulty understanding the consequences of the proceedings against him except in very concrete terms, such as either prison or a mental hospital such as FMC Rochester. He cannot understand how decisions about placement are made or the ramifications of those decisions.

Mr. Calek is able to describe the alleged offense behavior in a rational[,] coherent manner. In his present state, he can do little else to assist properly in his defense. The most prominent problem is an inability to concentrate or assimilate new information. Mr. Calek cannot understand even simple, concrete explanations of new concepts. He cannot utilize new information to make decisions pertinent to his legal defense, even when explained in simple[,] concrete terms.

1. In his supplemental report, Def. Ex. 3 (sealed), Dr. Logan discussed his interpretation of the raw psychological test data he had received from the FMC, specifically the results of the MMPI–2 given to the defendant on August 25, 1998, and the Weschler Adult Intelligence Scale—Third Edition (WAIS–III) given to the defendant on August 27, 1998. The WAIS–III shows a verbal I.Q. of 66, a performance I.Q. of 64, and a full scale I.Q. of 62. These scores put the defendant in "lowest 1% of the population and clinically are in the range of mild mental retardation." Def. Ex. 3 at 1. Dr. Logan disagreed with the conclusion of the FMC staff that the defendant's WAIS–III results were an underestimate of the defendant's true level of intellectual functioning since his scores were lower than estimates of his intellectual functioning during previous hospitalizations. The defendant's only previous intelligence testing was a Quick Test conducted in February 1984 that suggested an intellectual functioning of 75 to

80. No full intelligence tests such as the WAIS were conducted during any of the defendant's many hospitalizations after 1984. Dr. Logan notes that the I.Q. scores of schizophrenics decrease as their illness progresses. He therefore believes that the results of the 1998 WAIS are "representative of his current [intellectual] ability." *Id.* at 3. Analyzing how the defendant's low I.Q. scores affect his competency to stand trial, Dr. Logan states that

[s]ome defendants with borderline retarded intellectual functioning (I.Q. from 70 to 80) can be found competent to stand trial, although their intellectual deficits do compromise their ability to follow and comprehend court procedures and cooperate with an attorney. It has been my experience that those with an I.Q. in the mid 60's or lower, are rarely, if ever, found competent to stand trial as their intellectual deficits are substantial.

*Id.* at 2.

Mr. Calek has several symptoms, which adversely effect [sic] his performance in this regard. First, he is experiencing ongoing auditory hallucinations, which he must struggle to block out. Second, he has little energy, his ability to maintain his mental focus and concentrate is severely impaired. This goes beyond just characterological passivity, and is the result of both positive and negative symptoms of his mental disease, Schizophrenia. If tried in his present state, Mr. Calek can do little more than be a passive presence in the courtroom. He cannot assimilate information necessary to make relevant decisions that could effect his ultimate disposition. He cannot follow courtroom testimony or legal instructions from the bench.

From descriptions of his condition at FMC Rochester, it is likely Mr. Calek has deteriorated in the jail setting. Close contact with others in a noisy, crowded environment will activate his paranoia, and auditory hallucinations. Mr. Calek needs further treatment and medication adjustment to achieve stability.

*Id.* at 16. Dr. Logan concluded that the defendant's "mental disease and defect does [sic] not prevent him from understanding the nature of the proceedings against him, but does limit his understanding of the consequences of the proceedings and renders him unable to assist properly in his defense." *Id.* at 17.

In his order, the magistrate found that the defendant had failed to prove by a preponderance of the evidence, as he is required to do by 18 U.S.C. § 4241(d), that he is incompetent. *See also Medina v. California,* 505 U.S. 437, 449, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). The magistrate noted that a defendant is not incompetent to stand trial merely because he or she has a mental illness or takes antipsychotic drugs, or because he or she is of low intelligence or has a mental deficiency, or because he or she exhibits bizarre, volatile, and irrational behavior. The test for

determining competence to stand trial, the magistrate stated, is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Filing No. 24 at 5 (*quoting Dusky v. United States,* 362 U.S. 402, , 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The magistrate found the defendant competent to stand trial because he concluded that the FMC staff's belief that the defendant can assist in his own defense "if maintained on his medications" was more persuasive than Dr. Logan's belief that the defendant "cannot assist in his defense regardless of the medication." *Id.* This appeal followed.

The defendant's argument on appeal is that the defendant is incompetent to stand trial because he does not have the "ability to make rational decisions for rational, not delusional, reasons." Defendant's Brief at 2. The defendant argues that "the standard for competence to stand trial includes within its ambit 'decisional competence', that is the ability of a defendant to rationally and competently make trial decisions." *Id.* The defendant's argument rests on language in a recent decision in which the United States Supreme Court reflected on the "dire" consequences of forcing an incompetent defendant to stand trial. *Cooper v. Oklahoma,* 517 U.S. 348, 364, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

> Because [the incompetent criminal defendant] lacks the ability to communicate effectively with counsel, [the defendant] may not be able to exercise other 'rights deemed essential to a fair trial.' After making the 'profound' choice whether to plead guilty, the defendant who proceeds to trial
>
> > will ordinarily have to decide whether to waive his "privilege against compulsory self-incrimination" by taking the witness stand; if the option is available, he may have to decide whether to waive his "right to trial by jury"; and, in consultation with counsel, he

may have to decide whether to waive his "right to confront [his] accusers" by declining to cross-examine witnesses for the prosecution.

With the assistance of counsel, the defendant is also called upon to make myriad smaller decisions concerning the course of his defense. The importance of the rights and decisions demonstrates that an erroneous determination of competence threatens a 'fundamental component of our criminal justice system'— the basic fairness of the trial itself.

*Id.* (internal citations omitted).

Counsel for the defendant urges me to use this filter of "decisional competence" to look closely at the qualifications hung on the FMC staffs conclusion that the defendant is competent despite his long-standing, chronic schizophrenia and borderline intellectual functioning. For example, the FMC report suggested that some negative symptoms of the defendant's schizophrenia that could affect his ability to participate in his defense—stress and fatigue—could be alleviated "by giving him frequent breaks." Filing No. 10 at 8. The report further suggests that defense counsel could "assist the defendant by explaining things simply and concretely and checking to make sure he understands by asking him to repeat back the information." *Id.* To get around other symptoms of the defendant's schizophrenia identified by Dr. Logan as "low morale, poor motivation, a lack of interest in his surroundings, social withdrawal, isolation, easy fatigability and low energy," Def. Ex. 2 at 15, the report suggests the defendant could be made to overcome his "begrudging" compliance in performing tasks by "strong encouragement." *See* Filing No. 10 at 8.

As practical as this advice may seem, however, such suggestions are hardly workable during a jury trial for bank robbery. The disruption and delay caused by frequent rest or "explanation and repeat back" breaks would be considerable. Moreover, a jury could not help but be prejudiced by an attorney "strongly encouraging" his stressed, fatigued, withdrawn, and bewildered client to comply with some request he could not understand and process. Finally a defendant who is battling to control auditory hallucinations would be hard-pressed to listen critically to his attorney's advice, the testimony of a witness against him, or directions from the court.

I find that Dr. Logan's report more properly focuses on the key to the defendant's competence to stand trial: his inability "to make decisions pertinent to his legal defense, even when explained in simple concrete terms." Def. Ex. 3 at 16. Dr. Logan advised that if the defendant were to be tried "in his present state, [he] can do little more than be a passive presence in the courtroom. He cannot assimilate information necessary to make relevant decisions that could effect his ultimate disposition. He cannot follow courtroom testimony or legal instructions from the bench." In short, the defendant lacks the "present ability to consult with his lawyer with a reasonable degree of rational understanding" nor can he formulate "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. at 402, 80 S.Ct. 788. I therefore find that the defendant's disease or defect renders him mentally incompetent to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Accordingly,

IT IS ORDERED that

1) The magistrate's order (Filing No. 22) dated February 8, 1999, is reversed.

2) Pursuant to 18 U.S.C. § 4241(d), the defendant is committed to the custody of the Attorney General. Because the defendant has been previously examined at the Federal Medical Center in Rochester, Minnesota, I recommend that the defendant should be placed at the Federal Medical Center.

924

3) The Attorney General shall hospitalize the defendant for treatment in a suitable facility, preferably the Federal Medical Center:

    a) For such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

    b) for an additional reasonable period of time until

    i) his mental condition is so improved that trial may proceed, if this court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

    ii) the pending charges against him are disposed of according to law; whichever is earlier. If at the end of the time period specified in this order the defendant's mental condition has not improved as to permit trial to proceed, the defendant shall be subject to the provisions of 18 U.S.C. § 4246.

3) The Court takes notice of the magistrate's order (Filing No. 28) dated March 25, 1999, and further orders that the competency examination required by this order shall be conducted prior to or contemporaneously with the psychiatric or psychological examination for insanity required by the magistrate's order. Nothing in this order shall be construed as overruling or contradicting the magistrate's March 25, 1999, order.