# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3261

_____

| | | |
|---|---|---|
| Michael Wayne Ford, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri. |
| | * | |
| Michael Bowersox, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 11, 2001

Filed: July 10, 2001

_____

Before BOWMAN and FAGG, Circuit Judges, and CARMAN,* Judge.

_____

FAGG, Circuit Judge.

The State of Missouri charged Michael Wayne Ford with capital murder for his role in the stabbing death of Larry Sancoucie. Against his attorney's advice, Ford rejected a plea bargain limiting his sentence to thirty years' imprisonment. A jury convicted Ford and he was sentenced to life in prison without possibility of parole for fifty years. Ford's conviction was affirmed on direct appeal. See State v. Ford, 585 S.W.2d 472 (Mo. 1979). In state postconviction proceedings, Ford claimed his

_____

*The Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

attorney's failure to investigate and make the court aware of his incompetence denied him effective assistance of counsel. A devout member of the Assembly of God, Ford argued he was incompetent to stand trial because his capacity to advise counsel and to assist in his defense was impaired by his fervent belief that he would be acquitted by the divine grace of God.

After conducting a hearing, the state court rejected Ford's claim. The court noted Ford did not present any medical testimony to show his mental condition at any time before or during his trial or any time after his trial. Although Ford had been examined for hyperactivity years earlier, there was no evidence of a history of mental illness or hospitalization for any mental problem. Nothing in the attorney's investigation or in his meetings with Ford revealed any indication Ford had any mental abnormality. Ford's attorney discussed Ford's mental capacity and the possibility of a mental defense with Ford and his mother, but the attorney decided no mental defense was viable. Ford assisted in preparing for trial, and Ford was always lucid and composed during their discussions. Because there was nothing to put Ford's attorney on notice that Ford had a mental disease or defect, could not understand the substance and nature of the proceedings against him, or could not assist in his own defense, the court concluded the attorney had no duty to request an investigation of Ford's mental state, and the attorney's representation was objectively reasonable.

The Missouri Court of Appeals affirmed, reasoning Ford's attorney did not have sufficient cause to seek an independent investigation of Ford's mental state because Ford was able rationally to consult with his lawyer and to understand the proceedings against him. Ford v. State, 757 S.W.2d 255, 256-57 & n.1 (Mo. Ct. App. 1988). Ford also claimed the trial court denied him due process by failing to initiate an inquiry into his competence. The Missouri Court of Appeals held this claim was procedurally defaulted because Ford had not raised it in his postconviction motions or hearing, and was meritless anyway. Id. at 257. Ford then filed this federal habeas petition under 28

U.S.C. § 2254. The district court[**] denied relief, but granted a certificate of appealability on Ford's competency claim. We affirm.

Federal courts may grant habeas relief to a state prisoner on a claim only if the state court's rejection of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision involves an unreasonable application of Supreme Court precedent if it correctly identifies the governing legal rules but unreasonably applies them to the facts of a prisoner's case. Id. at 407. Here, the district court concluded the state court decisions were neither contrary to, nor an unreasonable application of, Supreme Court precedent. We review the district court's legal conclusions de novo. Simmons v. Bowersox, 235 F.3d 1124, 1130 (8th Cir. 2001).

The governing Supreme Court precedent is clear. To prove ineffective assistance of counsel, Ford must show his attorney's performance fell below an objective standard of reasonableness and the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's failure to request a competency hearing was objectively unreasonable if evidence raised substantial doubt about Ford's mental competence to stand trial. Drope v. Missouri, 420 U.S. 162, 181 (1975); see Speedy v. Wyrick, 702 F.2d 723, 726 (8th Cir. 1983). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to

---

[**]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

-3-

understand the proceedings." Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993) (Supreme Court's emphasis). Ford was incompetent if he lacked "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). Although no "fixed or immutable" signs create sufficient doubt about competence, pretrial behavior, demeanor during trial, and previous medical opinions regarding competency are relevant considerations. Drope, 420 U.S. at 180.

Ford argues the state court decisions holding his attorney was not ineffective in failing to raise the competency issue at trial are contrary to Drope because the decisions relied exclusively on evidence of Ford's conduct before trial and the lack of any psychiatric testimony, either at the trial itself or at the postconviction hearing nearly ten years later. According to Ford, the state courts should have considered evidence of Ford's irrationality that his attorney learned of during the trial, specifically, Ford's idea that angels "would be in the courtroom with [Ford] and that they would stand with the jurors" and prevent the jury from convicting him.

We cannot say the state court decisions were contrary to Supreme Court precedent or unreasonable applications of Supreme Court precedent to the facts of Ford's case. Although the state courts did not refer to angels, which Ford mentioned to his attorney after the trial started, the state courts clearly considered Ford's belief that he would be acquitted by the divine grace of God, and concluded that belief was insufficient to require Ford's attorney to request a competency hearing. See 757 S.W.2d at 256-57 & n.1. The duty to request a competency hearing, if warranted by the facts, continues throughout trial. See Drope, 420 U.S. at 181. No hearing was required in Ford's case, however, because there was no evidence his religious beliefs interfered with his ability to understand the proceedings and to assist in his own defense.

At the state postconviction hearing, Ford's attorney testified he had no basis at any time to believe Ford did not understand the nature of the charges against him or that he could not assist in his own defense. Ford's attorney stated that although Ford's religious beliefs "colored his judgment," Ford understood the proceedings and did "as good a job [assisting in his defense] as I've seen done." Despite his belief that God's angels would guide the jury to an acquittal, Ford continued to be actively involved in trial proceedings, made notes during witness testimony, and conferred with his attorney, demonstrating the continued ability to understand and assist in his defense throughout trial. Ford never appeared detached from reality or disruptive.

Although Ford's attorney knew of Ford's religious beliefs, those beliefs, standing alone, do not correspond with incompetency. See Valdez v. Ward, 219 F.3d 1222, 1241 (10th Cir. 2000) (sincerely held religious beliefs do not equate with incompetence). There was no evidence Ford's beliefs related to a mental disorder, which is typically persuasive evidence of incompetence. See Griffin v. Lockhart, 935 F.2d 926, 929-30 (8th Cir. 1991); Walker v. Gibson, 228 F.3d 1217, 1227-29 (10th Cir. 2000). Even when a medical evaluation is sought, clinicians are "very careful in characterizing religious beliefs as delusional," Ford v. Haley, 195 F.3d 603, 621 (11th Cir. 1999), especially when the religious views are shared by others. See Bottoson v. Moore, 234 F.3d 526, 538-39 (11th Cir. 2000) (quoting psychiatrist's hesitation to diagnose a person with religious hallucinations as mentally ill).

Ford's beliefs and conduct were consistent with the teachings of the Assembly of God, and did not interfere with his participation in his trial. According to Ford's minister and fellow parishioners, the Assembly of God believes in receiving and obeying visions sent by the Lord. Ford's mother and another fellow parishioner told Ford they had visions of his acquittal. Ford also received a vision directing him to fast for thirty-five days and he would be "delivered." From these visions, Ford developed the theory that God's angels would assure his acquittal. In a symbolic act of devotion, Ford stood on his Bible in the holding area outside the courtroom, following the Bible's

directive to "stand on [God's] word." Ford's attorney did not know about Ford's fast or his stance on the Bible. In sum, the evidence indicates Ford's actions and beliefs are the result of his serious-minded adherence to a recognized religious view rather than his incompetence to stand trial. Unlike Ford's attorney in this habeas appeal, we decline to label Ford's deeply held religious beliefs "preposterous," "irrational," and "bizarre." As the district court said, "Ford's trust in God as the ultimate decisionmaker and mover in the universe is a belief espoused by millions of people, though few, perhaps, would act on this trust as completely as has Ford."

Any due process claim based on the trial court's failure to raise a competency inquiry on its own is procedurally defaulted because the claim was not raised in Ford's state postconviction motion or hearing, and Ford has not shown cause and prejudice or actual innocence to excuse the default. Bousley v. United States, 523 U.S. 614, 622 (1998). Anyway, Ford's due process claim fails on the merits. Ford has not shown the trial court knew of facts that would have raised substantial doubt about Ford's competency. Pate v. Robinson, 383 U.S. 375, 385 (1966).

Ford also contends the state postconviction court's finding that Ford's decision to reject the plea was "reasoned and competent" was unreasonable in light of the facts and circumstances of the trial. See 28 U.S.C. § 2254(d)(2). We must presume the state court finding is correct, and Ford has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Ford fails to meet this burden. At the postconviction hearing, Ford's attorney testified Ford rejected the plea not only because of his deeply held religious beliefs, but primarily because of his youth and immaturity, and his fear of a thirty-year sentence. Ford testified he rejected the offer because he believed God would deliver him from the charge of capital murder and because he did not stab the victim. Ford's habeas attorney suggests Ford's trial attorney was ineffective in failing to advise Ford about the law of accomplice liability. This issue is beyond the scope of the certificate of appealability, however, and Ford has not tried to broaden the certificate's scope. Besides, although Ford testified

he didn't remember whether his trial attorney explained accomplice liability, Ford's trial attorney stated Ford understood his legal position under Missouri law. Because neither the district court nor the state courts made a finding that Ford had or had not been informed about accomplice liability, we could not resolve the issue. In any event, Ford's trial attorney believed the State had a strong case, Ford had little defense, and the plea offer was a favorable one. The attorney thought Ford would be convicted and told Ford it was not realistic to rely on divine intervention. Ford's rejection of the plea might be questioned, but he has not presented clear and convincing evidence that he was incompetent when he made the decision. Many people legitimately base important decisions on religious faith. Similarly, many defendants proceed to trial firmly convinced they will be acquitted regardless of the strength of the prosecution's case. We cannot say Ford's decision to rely on his recognized religious faith rather than his attorney's advice is clear and convincing evidence that he could not understand the proceedings and decide to reject the plea.

Like the district court, we conclude the state court decisions holding Ford's attorney was not ineffective in failing to raise the competency issue at trial were not contrary to or an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts. Because the evidence shows Ford's actions and beliefs are the result of his sincere adherence to a recognized religious view rather than his incompetence to stand trial, we affirm the denial of Ford's habeas petition.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.