NOT DESIGNATED FOR PUBLICATION

No. 116,661

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JERRY LEE ZABALA,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed October 13, 2017. Affirmed.

*Daniel O. Lynch*, of Johnston, Eisenhauer, Eisenhauer & Lynch, LLC, of Pratt, for appellant.

*Clay A. Kuhns*, special prosecutor, of Ashland, *Gaten T. Wood*, special prosecutor, of Medicine Lodge, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and HEBERT, S.J.

PER CURIAM: Jerry Lee Zabala filed a K.S.A. 60-1507 motion claiming his trial counsel was ineffective. The district court initially denied the motion without an evidentiary hearing. On appeal, a panel of our court reversed and remanded the matter to the district court for an evidentiary hearing. See *Zabala v. State*, No. 107,048, 2013 WL 1010302 (Kan. App. 2013) (unpublished opinion). Following the evidentiary hearing, the district court denied Zabala's motion. Zabala's appeal again brings the matter to us.

1

Zabala's charges arose out of a report that he inappropriately touched a nine-year-old girl in a restroom in a public park. A jury convicted him of aggravated indecent liberties with a child, obstructing official duty, and three counts of misdemeanor battery against law enforcement officers. His convictions were affirmed on appeal. *State v. Zabala*, No. 97,875, 2008 WL 3367570, at *7 (Kan. App. 2d 2008) (unpublished opinion).

Zabala then moved for relief pursuant to K.S.A. 60-1507. He alleged that he had been mentally incompetent to stand trial on the charges against him and that his trial counsel was ineffective in not seeking to have him examined for competency before trial. At the evidentiary hearing on his motion following remand by our court, the district court heard the testimony of Zabala, Debbie Zabala, and Robert Slinkard.

Debbie, Zabala's mother, testified that she had been concerned about her son's mental health all of his life. Zabala was nine years old the first time he stayed at Larned State Hospital. Debbie said that Zabala was "out of control" and had a "[b]ehavioral problem."

Debbie visited Zabala once after his 2006 arrest in the current case. When asked whether Zabala appeared coherent and could talk to her, Debbie said that he could talk to her. She did not attend Zabala's trial.

At the time of the hearing on Zabala's K.S.A. 60-1507 motion, Zabala believed his mental retardation or mental illness prevented him from receiving a fair trial. He did not remember much from his arrest, but he knew he was charged with indecent liberties with a child. He also testified that he was having hallucinations, and he remembered cutting

his arms. He said he saw shadows and ghosts, and he reported hearing spirits who told him to hurt himself.

Debbie noticed that her son did not appear to understand everything that was happening at the evidentiary hearing on his K.S.A. 60-1507 motion.

Before the proceedings in the present case, Zabala received a mental health evaluation in a 2005 case. L. Michael Garrett conducted that evaluation in August 2005, approximately nine months before Zabala was arrested in our current 2006 case. Garrett's report indicated that Zabala was competent to stand trial because "he understands the nature and the purpose of the proceedings against him and has the ability and desire to work with an attorney to present a legal defense." According to Garrett, Zabala had a moderate incapacity to understand the roles of courtroom personnel and his ability to testify or to challenge witnesses was moderately impaired.

No mental health evaluation or competency evaluation was conducted during Zabala's 2006 case or before sentencing.

After Zabala's convictions in our present case but before he was transferred to the Kansas Department of Corrections (KDOC), a physician's assistant visited Zabala in jail and prepared a report indicating that Zabala was suffering from depression and had been cutting his arms for attention.

When Zabala was transferred to KDOC to serve his sentences, KDOC prepared a reception diagnostics unit report which indicated that Zabala was mildly retarded with an IQ of 64-78. According to the report, Zabala had a pattern of a psychotic disorder most consistent with paranoid schizophrenia.

3

In January 2007, Zabala was transferred to Larned Mental Health Facility.

Slinkard testified that he had no concern with Zabala's mental capacity during the time that he represented him. When he was appointed to Zabala's case, Slinkard spoke with Kathy Wood, who was Zabala's trial counsel in the 2005 criminal case. Wood told Slinkard that she had filed a motion to determine Zabala's mental competency to stand trial and that Zabala had been found competent to stand trial. Slinkard had no reason to believe that Zabala's competency had changed between the competency evaluation in 2005 and his trial in 2006.

Slinkard said that he spoke with Zabala's mother, Debbie, who told him that Zabala was mildly retarded. Slinkard asked Debbie if Zabala's mental condition had changed over the last year. Debbie told Slinkard there was no change. When Slinkard learned that the 2005 competency evaluation found that Zabala had "some minor incapacity in regards to courtroom personnel," Slinkard went over the roles of the various court personnel with Zabala, and Zabala "didn't question any of that when I . . . did that." Slinkard questioned Zabala about the legal process and was satisfied that Zabala understood the process. He testified:

> "I knew that he was competent. I knew that we had specific conversations regarding what items we needed to suppress, in regards to motions. We went over at length the issue regarding the eye witness testimony and the identification. He understood those issues and the importance of those issues, so—and he was able to participate with me in regards to those issues."

Further, Slinkard considered the concerns raised in the 2005 competency evaluation. To address those concerns, Slinkard specifically addressed the trial process with Zabala and believed he understood the roles of all of the parties in the case.

4

But after observing Zabala testify at the K.S.A. 60-1507 evidentiary hearing, Slinkard believed Zabala's level of mental functioning since 2006 had deteriorated. The things Zabala now complained about had been handled at trial, and Zabala obviously had forgotten about them. For example,

"I would attempt to visit [Zabala] almost every time I was in Pratt, and that's because we did file a lot of motions. We had, you know, a lengthy suppression hearing regarding issues. We prepared for the preliminary hearing together. We went over the photographs. There was photographic evidence. There was an alleged—the prosecution alleged that he switched his clothes out of the—out of his backpack, things of that nature, so we did confer, quite frequently."

The district court concluded that Zabala failed to establish by a preponderance of the evidence that he was not competent to stand trial in 2006. In addition, the court found that Zabala failed to establish that trial counsel's representation fell below an objective standard of reasonableness. The district court stated:

"[T]he existence of Petitioner's mental health issues do not automatically equate to incompetence to stand trial. A review of Petitioner's testimony indicates that he did not specifically claim that he didn't understand the proceedings nor did he specifically claim he was unable to assist his attorney. He did indicate a limited recollection of the proceedings and discontent with the result his attorney obtained for him. If anything, his testimony shows he did comprehend the proceedings and is dissatisfied with the results of those proceedings."

The court found Slinkard to be a "compelling and credible" witness.

"A review of the court file indicates [Slinkard] filed numerous pretrial motions on behalf of Petitioner and vigorously argued identification and search and seizure issues on his behalf. Counsel conducted his own investigation of Petitioner's mental health issues and

5

was very well aware of Petitioner's prior mental health history. He described Petitioner being aware and involved in the litigation on the identification and search issues."

ANALYSIS

On appeal Zabala claims the district court erred when it denied him relief on his motion. This raises mixed questions of fact and law. In our appellate review we examine the record to determine whether substantial competent evidence supports the district court factual findings. We then review de novo the district court's legal conclusions. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

*Competency to stand trial*

Zabala claims his mental health deteriorated significantly between his competency evaluation in August 2005 and his trial in the present case in September 2006. The criminal trial of an incompetent defendant violates due process. *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996).

A criminal defendant is presumed competent to stand trial. *State v. Cellier*, 263 Kan. 54, 70, 948 P.2d 616 (1997). When a criminal defendant challenges competency, the defendant carries the burden of proof by a preponderance of the evidence. *State v. Barnes*, 293 Kan. 240, 256, 262 P.3d 297 (2011). In order to succeed, the defendant must show that the defendant is unable "to understand the nature and purpose of the proceedings against him" or "to make or assist in making his defense" due to a mental illness or defect. K.S.A. 22-3301; see *Cellier*, 263 Kan. at 70.

Here, Zabala did not request a competency hearing and did not challenge his competency until he filed his K.S.A. 60-1507 motion. At the hearing on that motion

6

Zabala bore the burden of proof by a preponderance of the evidence. See Kansas Supreme Court Rule 183(g) (2017 Kan. S. Ct. R. 222).

Zabala relies on the evidence presented at the evidentiary hearing in the KDOC's admission report, which was based on an evaluation 90 to 120 days after his convictions. But there is no evidence that his intellectual functioning diminished from the time of his initial evaluation in 2005, which found he was competent to stand trial, and his later trial in the present case in 2006. With regard to the Department of Corrections postconviction admission report, Zabala conceded that a defendant can transition between competent and incompetent over a relatively short period of time. See *State v. Davis*, 277 Kan. 309, 313, 85 P.3d 1164 (2004) (defendant's status changed from incompetent to competent over a six-month period of time).

When Zabala was evaluated about three weeks after trial while in jail and awaiting transfer to KDOC, he was described as calm, cooperative, and oriented. He responded appropriately to questions. Zabala recognized what he had had been convicted of and he denied his guilt.

When undergoing an evaluation to consider his transfer to Larned, the hearing process was explained to Zabala, he expressed an understanding of the process, and he agreed to sign a waiver of his rights before such a transfer.

During Zabala's testimony at the K.S.A. 60-1507 hearing, he never claimed that he did not understand the proceedings nor did he claim he was unable to assist his attorney. Zabala testified about his mental health and defects, but he established no connection between his mental health and his competency to stand trial.

The district court found, and there is substantial competent evidence supporting the findings, that Zabala understood the nature and purpose of the proceedings against him and was able to assist in his own defense. See K.S.A. 22-3301.

*Ineffective assistance of counsel*

Zabala claims that the decision of his trial counsel not to seek a competency evaluation prior to trial constituted ineffective assistance of counsel. The standards for measuring counsel's effectiveness are well known to the parties and can be found in *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

In our review of counsel's performance we are highly deferential to the decisions of counsel. We strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance absent a contrary finding. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Failure to seek a competency evaluation may later be deemed ineffective assistance of counsel when there is "reason to doubt" a defendant's competency to stand trial and counsel fails to seek a competency hearing. See *Davis*, 277 Kan. at 323-24.

In *Davis*, our Supreme Court found that counsel was ineffective in not seeking a competency evaluation prior to trial. 277 Kan. at 323, 327-29. But our current case presents different controlling facts from those in *Davis*. Trial counsel in *Davis* admitted that he should have sought another competency evaluation for his client. Further, Davis had been previously found incompetent and became competent only after treatment at

8

Larned. Even though Davis was deemed competent, a physician stated that it was unlikely that Davis would remain competent throughout the stress of trial.

The fact that Zabala suffered from mental illness does not automatically mean that he was not competent to stand trial. See *State v. Hill*, 290 Kan. 339, 371, 228 P.3d 1027 (2010). Here, unlike in *Davis*, Zabala was never found to be incompetent at any point. At the evidentiary hearing, Slinkard testified that Zabala's previous attorney advised him of the results of the 2005 competency evaluation. Slinkard also consulted with Zabala's mother. Slinkard testified that he had no reason to believe that Zabala's competency had changed since 2005. He had many conversations with Zabala in regards to various motions and trial strategies, and it was apparent to Slinkard that Zabala understood the importance of the issues and was able to participate and assist in his own defense. The district court found Slinkard's testimony to be credible.

The district court's factual findings are supported by substantial competent evidence, and those facts support the legal conclusion that Slinkard was effective in his representation of Zabala. The district court did not err in denying Zabala's K.S.A. 60-1507 motion.

Affirmed.