# IN THE COURT OF APPEALS OF IOWA

No. 22-0823
Filed July 13, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CASSIDY CHRISTOPHER YOUNG,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Butler County, Chris Foy, Judge.


        Cassidy Young appeals following his *Alford* pleas to two counts of lascivious acts with a child.  **AFFIRMED.**


        David James Hanson (until withdrawal), Fayette, and Karmen Anderson, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.


        Considered by Ahlers, P.J., Badding, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**SCOTT, Senior Judge.**

Cassidy Young appeals following his *Alford* pleas to two counts of lascivious acts with a child.[1]  Young asserts the post-plea competency assessment and the presentencing investigation, neither of which was conducted in-person, deprived him of due process.  He also contends the court erred in denying his motion for new trial based on newly discovered evidence, i.e., an affidavit that another man was living with victim's mother at the relevant time period, and his motion in arrest of judgment on grounds his pleas were not knowing and voluntarily entered.  Even assuming Young has good cause to appeal, his contentions lack merit.  So, we affirm.

**I. Background Facts.**

Young was charged with two counts of second-degree sexual abuse, class "B" forcible felonies.  Iowa Code § 709.3 (2020).  The State alleged Young sexually abused a child on February 24 and March 3, 2020.  Each count being subject to a twenty-five-year term of imprisonment with a mandatory minimum of seventeen years, which, if run consecutively, would require a minimum thirty-four-year term of imprisonment.  *Id.* §§ 902.9, .12.

On January 19, 2022—the morning jury trial was to begin—the State offered to enter into a plea agreement whereby Young would plead guilty to two counts of

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970); *see State v. Chapman*, 944 N.W.2d 864, 872 (Iowa 2020) ("'An *Alford* plea is different from a guilty plea in that when a defendant enters an *Alford* plea, he . . . does not admit participation in the acts constituting the crime.' . . . Rather, the defendant declares that he is choosing to plead guilty to a lesser charge instead of facing trial on a greater charge because the available evidence makes conviction likely, not because he admits he committed the charged crime." (internal citation omitted)).

lascivious acts with a child, which are class "C" non-forcible felonies with no mandatory minimum terms, with the two ten-year terms to be served consecutively. *See id.* §§ 709.8, 902.9(d). Young entered *Alford* pleas pursuant to the plea agreement; while not admitting he committed the acts he did acknowledge the evidence was such that a jury could find him guilty and that the reduction in the potential sentence was a "good enough reason . . . to agree to be treated like" he was guilty.

The district court determined:

> Mr. Young, based on the discussion we've had this morning, I am satisfied and I am finding specifically that you do understand and you are aware of the elements of the amended charges, the potential penalties that you face by pleading guilty to the amended charges, and the rights that you're giving up by entering *Alford* pleas and not going forward with the trial.
> Based on what's in the Minutes of Testimony and the summary of evidence provided by [the prosecutor] I am satisfied that there's a factual basis to support treating you as guilty of the two amended charges.
> I am also—I also find that the—the charging and sentencing concession that the State is making—primarily the charging concession, provides a sufficient basis for the court to accept a guilty—or to treat you like you're guilty despite your unwillingness to admit guilt.

The district court accepted Young's *Alford* pleas and informed Young of his right to file a motion in arrest of judgment. The court filed an order noting the change of plea, ordered a presentence investigation (PSI), and again noted the necessity of a timely motion in arrest of judgment.

On March 2, the defense contemporaneously filed an "application for mental evaluation and determination of competency, request for stay of proceedings, and request for hearing" and a motion in arrest of judgment asserting "the plea was not knowingly or voluntarily entered."

On March 7, a PSI report was filed with the court. In that report, the evaluator indicated:

> Mr. Young was set up to be interviewed for this report by phone. From the start of the interview he was disrespectful when asked to clarify even basic demographical information. When he was asked about what he was accused of doing and claimed he did not do anything and hung up, terminating the interview. Butler County Jail staff were able to get Mr. [Young] complete the presentence packet for this report. Mr. Young provided some information but it was generally vague and unable to be verified.

On March 11, after a hearing,[2] the district court found "probable cause to believe that Defendant suffers from a mental disorder which prevents him from understanding the proceedings in this case or assisting effectively in his own defense" and ordered a competency evaluation of Young.

A competency evaluation report prepared by Abraham Assad, MD, was filed with the court on April 21. Dr. Assad noted these sources for information:

> -- Interview on April 14, 2022, approximately 125 minutes
> -- Court Order for the Examination of Competency
> -- Presentence Investigation Report, dated March 6, 2022
> -- Medical Records from Farid Manshadi, MD, dated August 11, 2015 to June 1, 2016
> -- Social History Records
> -- Butler County Jail Records
> -- Law Enforcement Records

The evaluator opined:

> At this time I believe Mr. Cassidy Christopher Young is **competent to stand trial.** He meets criteria for [two disorders]. He does not report, endorse, or manifest any symptoms currently influencing his understanding of the legal process or his ability to assist legal counsel. He understands the charges against him. He has a rational and factual understanding of the court process, including key personnel and their functions. He is able to work effectively with his defense counsel without interference of any psychological symptoms. He is aware of appropriate courtroom

---

[2] We have no transcript from that hearing.

behavior and is able to manage his own behavior. His current medication regimen would not be expected to interfere with his ability to receive a fair trial.

On April 29, Young filed a "motion for new trial" on grounds "the verdict is contrary to the weight of the evidence" and "Defendant has not received a fair and impartial trial."

A reported hearing was held on May 9, at which the court considered Young's competency and pending motions. With respect to competency, the defense did not present any evidence but asserted Dr. Assad's evaluation was "problematic" because it was not an in-person evaluation but telephonic. In addition, defense counsel stated Young reported he was "not on his medications on the day he was evaluated." The court noted that even so, Dr. Assad found him competent.

The court noted it had requested the evaluation "more as a precaution as anything else." Continuing, the court noted:

> It's been the court's opinion and its observation in its dealings with you that you are competent to understand the proceedings, that you are competent to understand the nature and the severity of the charges against you; and based on my observations in your interactions with [defense attorney] Mr. Metcalf, it appears to the court that you are capable of communicating with him in a manner which he can—so that he can assist you in defending you, that you can assist him in preparing your defense.
>
> . . . I was satisfied, based on our—our dealings on January 19th of this year, that you were competent at the time that you entered your *Alford* pleas.
>
> My concern, when I ordered this most recent evaluation, was that I did not want to proceed to sentencing with a person that was not capable of understanding what was taking place. And the evaluation that Dr. Assad has conducted and has prepared a report on concludes that you are capable of understanding the proceedings.

The court found Young competent,[3] lifted the suspension of the proceedings, and moved to the motions for new trial and in arrest of judgment.

The defense argued it had newly discovered evidence that could be helpful if presented to a jury. Defense counsel acknowledged the information that another man living with the victim's mother was "[o]n its face" not "totally exculpatory, but it puts another male in the picture."[4]

The court addressed Young directly:

[I]t's the court's view that because you did enter *Alford* pleas, what other information or other exculpatory evidence there may have been at the time of trial, whether your attorney knew about it or not, I don't believe that it's—it's relevant; and I don't believe it's something that the court can or should rely on as a basis for setting aside your *Alford* pleas.

At the time of your plea change, we spent a fair amount of time talking. And when I say we, you and I, and obviously the attorneys were there and participated. But there was a fair amount of conversation about what evidence the State was relying on.

You were not admitting guilt. You were indicating that the different reasons we discussed on the record at the time of the plea change, that it was to your benefit for the court to accept your *Alford* plea, treat you as though you were guilty, so that in exchange, you would no longer be facing two class "B" felonies, each carrying a prison sentence of up to 25 years, each of them carrying a mandatory minimum sentence of at least 17 years in prison, that it was to your benefit to avoid those more serious charges.

The court rejected the assertion made in the motion in arrest of judgment that the pleas were not knowingly and voluntarily entered. It summarized:

And based on what was covered during the plea change proceedings, which shown up or reported in the transcript of that

---

[3] A written ruling concerning the considerations of the court and its findings was filed that same date.

[4] The evidence outlined at the plea hearing included images found of inappropriate conduct with an identifiable child when analyzing Young's phone. Some of the images showed a man's hand. Another was a "selfie." The defense asserted the new evidence was that the hand in the images could be those of the man living with the mother at the relevant time.

proceeding, it's the court's opinion that your plea was knowingly and voluntarily entered, Mr. Young.

There were times you—you wanted to be able to speak privately with your attorney as we were taking the—the plea change or engaging in that hearing. You were given those opportunities.

After any time you took a break—I won't say every time but most times after you took a break, I asked you whether you had an opportunity to get your questions answered by Mr. Metcalf, and I think most every time you indicated you had.

And you know, to the extent there were any times in the plea change proceedings where it was unclear to me whether you truly understood or appreciated what was taking place, within, you know, a short time later after a particular response you gave that raised a question in my mind, I didn't have to wait much more than a minute or two for you to make another response or ask a question that made it clear to me you were understanding what was happening.

I mean there was a couple times you made what I would consider sort of a snappy comment, and the only way that those comments would have made any sense is that you understood what was happening. You may have disagreed with how everything was going to be playing out, but you certainly understood what was happening and appreciated the significance of your *Alford* pleas. And for that reason, I am satisfied that your plea was knowingly and voluntarily entered.

Moving on to sentencing, the defense objected to the PSI being conducted telephonically. The court confirmed the plea agreement included a joint recommendation of sentence. The court acknowledged it had no personal knowledge how PSI reports were prepared and asked "what different information would there be in the PSI if the court were to require somebody meet with Mr. Young in person." It asked the defense to "specifically identify matters in his PSI that are incorrect or incomplete." Counsel asked that Young be allowed to do so, which the court reluctantly allowed. Young noted his weight and height were incorrect and then objected to the investigator's rudeness and antagonism.

Both parties recommended that the court impose the sentence agreed upon. The court found the joint recommendation appropriate, noting:

There were two separate offenses here. One was committed in February of 2020. The other was committed in March of 2020. For that reason, I do believe consecutive sentences are appropriate. I've noted this before, but I'll just repeat that there is no mandatory minimum time on either one of these. And with good conduct credit and other credits that are available, it's entirely possible that you will not serve anywhere close to the maximum indeterminate sentence on either one of these offenses.

Ultimately, that will depend on how you conduct yourself once you're in prison and how—how you proceed. I mean, sex offender treatment will certainly be required as part of your sentence on each of these convictions. And I appreciate you—you maintain that you're not guilty.

I will tell you, Mr. Young, you're not the first person. I've had people found guilty by a jury who maintain they're innocent. And at this point, the court is satisfied that the State's got the right person here and it is appropriate for the court to impose sentence on each of these charges.

Certainly, a factor the court considers in its decision is whether you take responsibility. And you deny responsibility for any inappropriate contact with the victim in this case.

The court imposed consecutive indeterminate ten-year terms and entered judgment consistent with the plea agreement. Young now appeals.

## II. Authority to consider on appeal.

Iowa Code section 814.6(1)(a)(3) (2022) limits the direct appeal of a guilty plea to a class "A" felony unless the defendant establishes "good cause." We must determine whether Young has good cause to appeal from his *Alford* pleas. *State v. Tucker*, 959 N.W.2d 140, 153 (Iowa 2021).

Our supreme court has liberally interpreted good cause to mean the defendant need only show a "legally sufficient reason." *Id.* (quoting *State v. Damme*, 944 N.W.2d 98, 104 (Iowa 2020)). What constitutes a legally sufficient reason is context specific. *Id.* This court has concluded "that good cause exists to challenge competency at the time of the plea irrespective of whether the issue was contested below." *State v. Cue*, No. 19-2150, 2020 WL 6157813, at *3 (Iowa

Ct. App. Oct. 21, 2020), *further review denied* (Dec. 22, 2020); *see also State v. Chindlund*, No. 20-1368, 2021 WL 2708944, at *2 (Iowa Ct. App. June 30, 2021). Our supreme court has agreed the defense raised a legally sufficient reason to appeal to address a claim the district court failed to sua sponte order a competency examination. *State v. Newman,* 970 N.W.2d 866, 870–71 (Iowa 2022). The State assumes Young has good cause to appeal.

## III. Discussion.

Turning to the merits of his appeal, Young first argues that because Iowa Code section 812.4(1)[5] refers to a person "arriving at a psychiatric facility for the performance of the evaluation," an in-person competency evaluation is implied and required to satisfy his due process rights. Yet, he cites no Iowa or federal court case to support that assertion.

"The trial of an incompetent defendant in a criminal matter violates the defendant's due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution." *State v. Lyman*, 776 N.W.2d 865, 871 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l Inc.*, 880 N.W.2d 699, 707 (Iowa 2016); *see also Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). "In Iowa, we define the test as whether 'the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense.'" *Lyman*, N.W.2d at 874 (quoting Iowa Code § 812.3(1)). Our review is de novo. *Id.* at 873.

---

[5] Section 812.4 governs hearings to determine competency, and subsection (1) provides, "A hearing shall be held within fourteen days of the arrival of the person at a psychiatric facility for the performance of the evaluation, . . . ."

The case Young does cite, which is a California unpublished opinion, offers him no support. *People v. Ward*, No. C088158, 2021 WL 717597 (Cal. Ct. App. Feb. 24, 2021). *Ward* involved a defendant who refused to meet with the competency evaluator, leaving the evaluator unable to offer an opinion as to competency. 2021 WL 717597, at *3. Young cites to the testimony of the evaluator that an interview with the defendant was a "critical step" when evaluating competency, and that "[w]ithout a personal evaluation, it would be inappropriate to offer opinions about a defendant." *Id.* Using this testimony, Young contends an in-person interview is constitutionally required.

Yet, Young does not mention that the *Ward* appellate court found there was nonetheless substantial evidence to support the jury's finding the defendant was competent to stand trial, noting the defendant's interviews with detectives, his expressed understanding of the basic criminal procedure, and statements in court, and his ability to assist counsel in his defense. *See id.* at *5–6. Young does not contend Dr. Assad was unable to offer an opinion as to his competency and does not identify any deficiency with the competency evaluation itself—other than it was not in-person. Dr. Assad's report to the court provided his observations during the teleconference interview about Young's capacity to appreciate the charges and understand the legal proceedings in which he was involved. So, too, the district court made findings that Young understood what was happening and appreciated the significance of his *Alford* pleas. Young has failed to meet his burden to overcome the presumption of competence. *See Lyman*, 776 N.W.2d at 874.

We also reject Young's second assertion, that the lack of a face-to-face PSI interview denied him his right "to confront accusers," citing the Sixth Amendment

to the United States Constitution and Article I, Section 10 of the Iowa Constitution. Again, Young does not cite authority for this proposition, which by itself is sufficient to deem the issue waived. Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Moreover, his right to confront witnesses did not apply after accepting a plea of guilty. *See* Iowa R. App. P. 2.8(b)(4) (stating that "*before accepting a guilty plea*, . . . the defendant has a right to be tried by a jury, and at trial has . . . the right to confront and cross-examine witnesses against the defendant" (emphasis added)).

Young next contends the district court erred in denying his motion for new trial/in arrest of judgment based on newly discovered evidence. "We review a denial of a motion in arrest of judgment for abuse of discretion and will reverse only if the ruling was based on reasons that are clearly unreasonable or untenable." *State v. Myers*, 653 N.W.2d 574, 581 (Iowa 2002).

Here, the court found the purported new evidence was not relevant because Young had chosen to accept the plea agreement to avoid a possible conviction and longer sentence. Young now seeks to frame his claim as one of actual innocence, relying on *Schmidt v. State*, 909 N.W.2d 778, 795, 797 (Iowa 2018) (recognizing a "freestanding claim of actual-innocence," and holding "[for an applicant to succeed . . . the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence"). But the defense acknowledged at the hearing, the evidence was not "totally exculpatory, but it puts another male in the picture." And Young himself

stated, "A reasonable jury could have found me guilty.  A reasonable jury could have also found me innocent, Judge."

We have reviewed the court's reasons for denying the motion in arrest of judgment, we find no abuse of discretion.  We affirm.

**AFFIRMED.**