

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00156-CR

_____

ZYSHON GERROD MURPHY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1778963

---

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In a single issue, Appellant Zyshon Murphy argues that the trial court abused its discretion by not on its own motion conducting an informal inquiry into his competency to stand trial. Although Murphy presented evidence about his mental health, he presented no evidence that his mental-health issues prevented him from having (1) a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or (2) a rational as well as factual understanding of the proceedings against him. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(a). Accordingly, we hold that the trial court did not abuse its discretion by not conducting an informal competency hearing, and we affirm.

### I. Factual Background and Procedural History

Murphy has significant anger-management issues that he has tried to control for most of his life through counseling and medication. Unfortunately, Murphy's outbursts have increased when he does not see his doctors and does not take his medication.

Murphy briefly worked part time with children in the City of Fort Worth's recreation department. When the City terminated Murphy for drug use, Murphy sent a profanity-laced email to the City, stating among other things, "DA CAN DIE FOR ALL I FUCKING CARE." In response, various City offices went into a "lockdown" protocol.

Just over a year later, on May 5, 2023, Murphy posted a chilling video on Snapchat. Showing a shotgun with ghost-ring sights, Murphy threatened to go to downtown Fort Worth the afternoon of Sunday, May 7—which was during the City's annual Mayfest event—to indiscriminately "kill innocent people for the fun of it" and to kill any police officers who tried to stop him. Murphy had around 5,000 followers, and the video metastasized online; more than 60 people from around the country called 911.

On the day Murphy posted the video, Fort Worth police officers arrested him. The interviewing officers *Mirandized*[1] Murphy, and Murphy agreed to answer their questions. Murphy knew why he had been arrested and admitted to making the video, but he claimed that he was just "venting" and "joking" and did not intend to act on his words. Murphy said, "I know it's wrong," and "I went too far." He also acknowledged, "I made the mistake, so whatever punishment I've got to do, I've got to do it."

Murphy was charged with terroristic threat, intentionally threatening to commit murder with the intent to place the public in fear of substantial bodily injury. *See* Tex. Penal Code Ann. § 22.07(a)(5). Murphy waived his right to a jury trial and pleaded guilty. In considering Murphy's guilty plea, the trial court inquired into whether Murphy understood his charge and had discussed it with his attorney. Murphy

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

answered affirmatively to both questions. The trial court also asked Murphy's attorney whether Murphy was competent to enter a plea, and she said, "Yes, he is."

The punishment phase began immediately, and the State published Murphy's threatening Snapchat video and his police interview video and called several witnesses to testify about Murphy's employment, the Snapchat video, and the police investigation. After the State rested, Murphy called several witnesses, including himself, his mother, and a psychologist. Among other things, they offered testimony about his mental-health issues (including Murphy's diagnosed ADHD, autism spectrum disorder, and dysregulation mood disorder), his prior mental-health hospitalizations, and how Murphy had been dealing with anger outbursts since he was four years old.

No one suggested that Murphy was incompetent to stand trial or connected his various mental-health issues with his competency to stand trial. In fact, Murphy took the stand in his own defense, answered questions from his own lawyer and the State's, and testified that he understood the severity of his charge; he apologized to the court, his family, the City, and others he had scared.

On the second day of the sentencing trial, Murphy's counsel filed a motion to withdraw his guilty plea, hoping to have Murphy accepted into a mental-health diversion program. But at the close of the evidence, Murphy withdrew his motion. Murphy, who had no criminal record, recounted his mental-health struggles and asked for probation. The State responded that the case was not about Murphy's mental

4

health or autism spectrum disorder but about his violent tendencies and uncontrollable anger outbursts. The trial court accepted Murphy's guilty plea and assessed punishment at five years' confinement, within the range for a third-degree felony. *See* Tex. Penal Code Ann. §§ 12.34, 22.07(e).

## II. Discussion

In his sole appellate issue, Murphy argues that the trial court erred by not conducting an informal inquiry into Murphy's competency. As a matter of constitutional due process, an incompetent criminal defendant may not stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *see Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S. Ct. 1373, 1376 (1996) ("We have repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" (quoting *Medina v. California*, 505 U.S. 437, 453, 112 S. Ct. 2572, 2581 (1992))). "Due process also mandates state procedures that are adequate to assure that incompetent defendants are not put to trial." *Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013). Chapter 46B effectuates those procedures. *See* Tex. Code Crim. Proc. Ann. arts. 46B.001–.171.

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *See id.* art. 46B.003(b). As the Court of Criminal Appeals has stated,

> Substantively, incompetency to stand trial is shown if the defendant does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a

5

rational as well as factual understanding of the proceedings against the person." *Id.* art. 46B.003(a). Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial. The first step is an informal inquiry; the second step is a formal competency trial.

*Boyett*, 545 S.W.3d at 563 (selected citation omitted). Murphy challenges the lack of the first step.

## A.    Preservation of Error

Before turning to the merits, we address the State's argument that Murphy failed to preserve error by not objecting to the trial court's having not sua sponte conducted an informal competency inquiry. Generally, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Most complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). But Rule 33.1 "does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal." *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009).

Article 46B.004(c) requires a trial court, on suggestion that a criminal defendant may be incompetent to stand trial, to determine by informal competency inquiry whether "there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *See* Tex. Code Crim. Proc. Ann. art. 46B.004(c). As the Court of Criminal Appeals has said: "A law that puts a duty on the trial court to act sua sponte, creates a right that is waivable only. It cannot be a law that is forfeitable by a party's inaction." *Proenza v. State*, 541 S.W.3d 786, 797 (Tex. Crim. App. 2017) (quoting *Mendez*, 138 S.W.3d at 342); *see Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

Accordingly, a complaint that the trial court did not comply with Article 46B.004(c) is a waivable right, which Murphy did not waive. *See Proenza*, 541 S.W.3d at 797; *Guerra v. State*, No. 11-19-00359-CR, 2022 WL 599241, at *5–6 (Tex. App.—Eastland Feb. 28, 2022, no pet.) (mem. op., not designated for publication) (allowing criminal defendant to raise appellate challenge that the trial court should have conducted an informal competency inquiry); *Johnson v. State*, Nos. 2-05-205-CR, 2-05-206-CR, 2006 WL 2578033, at *4 & n.37 (Tex. App.—Fort Worth June 22, 2006, no pet.) (abatement order, not designated for publication) (holding that criminal defendant did not forfeit complaint about trial court's not having conducted a competency determination). We therefore reach the merits of Murphy's issue.

7

**B.    Standard of Review and Applicable Law**

We review a trial court's failure to conduct an informal inquiry into a criminal defendant's competency to stand trial for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner*, 422 S.W.3d at 692 & n.31; *Dusenbery v. State*, No. 02-16-00125-CR, 2018 WL 4025078, at *7 (Tex. App.—Fort Worth Aug. 23, 2018, pet. ref'd) (mem. op., not designated for publication). A trial court does not abuse its discretion absent a showing that its decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426.

"An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." *Boyett*, 545 S.W.3d at 563 (citing Tex. Code Crim. Proc. Ann. art. 46B.004(a), (c), (c-1)). When "evidence suggesting" that a defendant in a criminal case "may be incompetent to stand trial comes to the attention of the [trial] court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004(b); *Dusenbery*, 2018 WL 4025078, at *8. "Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent." Tex. Code Crim. Proc. Ann. art. 46B.004(c-1); *Dusenbery*, 2018 WL 4025078, at *8. The article 46B.024 factors are:

(1)    the capacity of the defendant during criminal proceedings to:

(A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

(B) disclose to counsel pertinent facts, events, and states of mind;

(C) engage in a reasoned choice of legal strategies and options;

(D) understand the adversarial nature of criminal proceedings;

(E) exhibit appropriate courtroom behavior; and

(F) testify;

(2) as supported by current indications and the defendant's personal history, whether the defendant:

(A) is a person with mental illness; or

(B) is a person with an intellectual disability;

(3) whether the identified condition has lasted or is expected to last continuously for at least one year;

(4) the degree of impairment resulting from the mental illness or intellectual disability, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner; and

(5) if the defendant is taking psychoactive or other medication:

(A) whether the medication is necessary to maintain the defendant's competency; and

(B) the effect, if any, of the medication on the defendant's appearance, demeanor, or ability to participate in the proceedings.

Tex. Code Crim. Proc. Ann. art. 46B.024.

9

## C. Analysis

Murphy argues that the following evidence raised the suggestion that he might have been incompetent to stand trial:

- Since he was five years old, several psychiatrists had cared for Murphy and had diagnosed him with autism spectrum disorder, disruptive mood dysregulation disorder, ADHD, and bipolar disorder.

- Murphy had suffered from mental illnesses for an extended period of time, starting at age five.

- While in school, Murphy needed and received special-education services from elementary school through graduation.

- Murphy had received in-patient care at two Tarrant County mental-healthcare facilities.

- His MHMR group-home placement, recommended after one of his hospitalizations, lasted six months and ended because of COVID-19 restrictions and not because Murphy was well.

- When Murphy turned 19, his mother was concerned about his being able to care for himself and wanted to get a guardianship over Murphy.

- When Murphy inherited some money, his mother testified that "[she] put it in a special needs trust is how [she] was trying to set it up."

- While Murphy awaited trial in the Tarrant County Jail, MHMR provided continuous mental-health treatment, including daily doses of mental-health medications.

Murphy argues that this evidence about his mental illness should have caused the trial court to conduct an informal inquiry.[2] But as the Court of Criminal Appeals stated in *Turner*:

> The fact that a defendant is mentally ill does not by itself mean he is incompetent. Nor does the simple fact that he obstinately refuses to cooperate with his trial counsel. Indeed, even a mentally ill defendant who resists cooperating with his counsel may nevertheless be found competent if the manifestations of his particular mental illness are not shown to be the engine of his obstinacy. But when a defendant's mental illness operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests, he cannot be made to stand trial consistent with due process. Evidence that raises this possibility necessitates an informal inquiry, and if that inquiry reveals that the possibility is substantial, a formal competency trial is required.

422 S.W.3d at 691; *see Boyett*, 545 S.W.3d at 564 ("[T]here must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness.").

---

[2]Murphy specifically argues that the evidence should have "triggered a bona fide doubt as to competency[,]" and he cites *Gray v. State*—a 2008 decision—in support. 257 S.W.3d 825, 829 (Tex. App.—Texarkana 2008, pet. ref'd). But as the State points out, the Legislature changed the law in 2011 to eliminate the bona-fide-doubt requirement, so we do not apply that standard. *See Turner*, 422 S.W.3d at 692 n.32 (citing Acts 2011, 82nd Leg., ch. 822, §§ 2 & 21(b), p. 1895 & 1901, eff. Sept. 1, 2011 (adding Subsection (c–1) to Article 46B.004 to provide in pertinent part that: "A suggestion of incompetency is the threshold requirement for an informal inquiry under Subsection (c) and may consist solely of a representation from any credible source that the defendant may be incompetent. A further evidentiary showing is not required to initiate the inquiry, and the court is not required to have a bona fide doubt about the competency of the defendant.")).

Simply put, a defendant's mental illness, past or present—absent credible evidence that *because of it*, he lacks "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him,]" Tex. Code Crim. Proc. Ann. art. 46B.003(a)—"does not [by itself] equate to a suggestion of incompetency." *Dusenbery*, 2018 WL 4025078, at *9 (cleaned up) (citing *Graves v. State*, No. 02-15-00141-CR, 2015 WL 9244767, at *3–4 (Tex. App.—Fort Worth Dec. 17, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that a defendant's suicide attempt absent "evidence of severe mental illness" was "not a suggestion of" incompetency)); *see also Pleasant v. State*, No. 01-23-00144-CR, 2024 WL 3350254, at *8–9 (Tex. App.—Houston [1st Dist.] July 9, 2024, pet. ref'd) (mem. op., not designated for publication) (holding no abuse of discretion in trial court's not conducting an informal competency inquiry based on evidence of a defendant's mental-health concerns and ongoing psychoactive medication at the time of trial); *Clark v. State*, 592 S.W.3d 919, 928 (Tex. App.—Texarkana 2019, pet. ref'd) (concluding that trial court did not abuse its discretion by finding defendant competent even though defendant had mental illness and failed to cooperate with counsel because defendant's mental illness "does not by itself mean he is incompetent") (quoting *Turner*, 422 S.W.3d at 691).

Although the record contains evidence that Murphy had mental-health issues for which he had received treatment and medications, including while he awaited trial,

nothing suggested that Murphy could not cooperate or consult with his lawyer or understand or participate in the proceedings, and the trial court was able to observe Murphy's interactions with his counsel and with the State's counsel when Murphy testified on his own behalf. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(a); *Turner*, 422 S.W.3d at 691. We therefore hold that the trial court, which was in the position to view Murphy's demeanor during trial—and which did generally inquire about Murphy's competency immediately before the punishment trial began—did not abuse its discretion by not sua sponte further conducting an informal competency inquiry. *See McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003) (concluding that trial court did not err by not holding a formal competency inquiry and stating that it "cannot ignore the trial court's first-hand factual assessment of [the defendant's] mental competency" and that trial court's factual findings "are entitled to great deference").

We overrule Murphy's sole issue.

### III. Conclusion

Having overruled Murphy's sole issue, we affirm the trial court's judgment.

13

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 17, 2025